We're going to move now to appeal number 22-1195. This is United States v. Deon Evans. We're going to begin with argument from the appellant, Ms. Wong. You may approach. Thank you, Your Honor, and may it please the Court. My name is Caroline Wong of Sidley Austin, and I represent defendant appellant Deon Evans. This case should be remanded because of two interrelated problems with the representation Mr. Evans received below. First, there's his trial counsel's deficient performance, and second, there is his trial counsel's drug addiction, which explains that performance. Trial counsel wasn't prepared for trial. He failed to respond to key pretrial motions. He failed to cross-examine the majority of the government's witnesses. I thought it was five of the 11, didn't cross. He didn't cross at all five of the 11, but two of the government's witnesses he also failed to meaningfully cross-examine. One of them he'd asked only two questions, neither of which had any relevance to the elements at issue in the case. The other was asked only five questions. Again, they were extraordinarily cursory. Shortly after the verdict, trial counsel, of course, we know from the record, then overdosed on heroin and had an encounter with the police as a result. Trial counsel's drug addiction problems undermine the reliability of this trial. We have a defendant who's been sentenced to 65 years, but because of trial counsel's drug addiction, we cannot presume that counsel's failures were just him acting based on strategic judgments. What's the connection you're making between the drug addiction, the proof of the overdose 19 days after the trial, and the performance at trial? Well, the key connection there is the evidence in the police report from that overdose incident. And what's important about the report is it reflects a witness statement indicating that trial counsel had been dealing with substance abuse problems in the period leading up to that overdose. This is his girlfriend. Correct. Yes, that's who makes the statement. In addition to that, the police report reflects a statement from the girlfriend telling the police the name of the person from whom trial counsel usually purchased his drugs at the time. That evidence shows that this overdose was not just a one-time incident the way that the government presents it in its brief. It's very strong evidence that this was an ongoing problem of drug addiction, including before and during the trial, just approximately 19 days before the overdose happened. That's an inference, but is that so strong an inference that it's compelled on this record? Because Judge Bruce does say that as for the days covered by the trial, he didn't observe any noticeable impairment, which I would assume means slurring your words or falling asleep at the table or bizarre behavior or whatever else one might observe. So, Your Honor, it's not a conclusion that is necessarily compelled by this record, but that inference is a very, very plausible one and at a minimum should have required an evidentiary hearing so that the parties could test that evidence, develop further evidence about trial counsel's substance abuse during the trial and explore that issue. But instead, Judge Bruce denied Evans' request for an evidentiary hearing on that issue. And his basis for doing so was, as he stated in his order on the post-trial motions, was that there was no evidence whatsoever indicating that trial counsel had been using drugs. That simply isn't correct. That's an abuse of discretion. Given the police report. So can I ask you, are you stressing as you're standing here today the chronic argument, or are you willing to assume that Mr. Sarm did enough to put us over into Strickland territory? We do submit that given this court's prior decisions applying chronic, that this case could be evaluated under that standard. And in particular, I would refer to the various habeas cases that we cite in our brief, where this court has even found that prior fact patterns similar to or even less extreme than the fact pattern here amounted to a violation of clearly established federal law under the 2254D standard. Of course, here we're on direct appeal, so the standard is very different. It's not that deferential standard from 2254D. And so for that reason, we've been using both chronic. We have arguments, of course, in our brief about Strickland. Right, you do. Can I ask you to just take a detour for a minute, because time is short, and address your 924C sentencing argument? Because that, I think, this line between one incident and several incidents has been very difficult to draw. The Tenth Circuit has discussed it in a bank opinion by then-Judge Gorsuch. How do we know that something is a separate crime, and should we be willing to say that his sale of the cocaine was a separate incident from his possession of the methamphetamine? So, Your Honor, I would submit that the court should follow the approach that the Second Circuit took in the Finley decision. The government doesn't dispute in its brief that Finley is factually indistinguishable from this case, and that if the government were to find in the government's favor on this issue, that that would create a split with the Second Circuit. Finley, the standard in Finley is that a defendant can be charged with only one 924C count if the charges are based on continuous possession of a firearm during simultaneous or nearly simultaneous conduct. And so your argument would be the firearm is sitting there next to the two different drugs. He does dispose of some of the cocaine, I don't know if some are all, and then drives off for the next 30 minutes. And so your argument would be that's just all close enough to simultaneous that it fits in Finley. Yes, that's correct. What I would add to that is it's not just that the two underlying predicate crimes were close to simultaneous in time. There was a point in time when they were actually overlapping. And that really narrows the scope of what the nearly simultaneous standard can do. Ms. Wong, can I take you back to the ineffective assistance real quick? Sure. The reason for an evidentiary hearing or a reason for it may be different than what you've argued in your brief. And here's what has concerned me about this. Mr. Sarm enters the case, you can correct me if I'm wrong, at a time when the defendant moved to withdraw his guilty plea on count three, the 924C charge, correct? Yes, that motion was pending when Sarm entered the case. And then he argued it should be withdrawn. Okay. When I saw that in the procedural history, I thought as night follows day, what is going to happen here is the government is going to supersede and inject the methamphetamine into the case, which was never in the case before. And a second 924C charge is coming. And what in the world on this fact pattern could possibly be the defense to the 924C violation? Now, I understand that your client was trying to argue that he stopped in some town in Illinois and picked up a gun, and therefore didn't have the gun at the time of the initial exchange on August 24th, correct? That's what he argued. That seems entirely implausible to me. He's under DEA surveillance the entire time that all of this happens. What's my point? My point is that Mr. Sarm had never been involved in federal criminal law by his own acknowledgement before. Are we absolutely certain that he was aware of 924C and its consequences with mandatory consecutive sentencing? At a time when, if you credit the police report, he's impaired by substance abuse, and the advice around withdrawing the guilty plea is something I had a real question about, reading the procedural background here, because it seemed like he's going to face a second 924C charge with 100% certainty. That's what happened. And there's no defense. None. So a couple of points on that, Your Honor. First, I see nothing in the record that gives me any confidence that Mr. Sarm did have full knowledge of the federal sentencing regime and 924C, the consequences of all of that, so I absolutely share that concern as well as many other concerns about the representation that Evans received from Mr. Sarm below. That's one of the reasons why, at a minimum, Evans should have had an evidentiary hearing to explore these issues. I do want to clarify that the evidence about driving around the town of Gilman, that did come up through somewhat vague testimony during the guilty plea hearing. That wasn't the theory at trial. And we do submit also that there are viable defenses to the 924C charges and that there were defenses that trial counsel could have and should have developed. I see that I'm running low on time, though, so I will reserve the rest of my time for rebuttal. That's fine. We'll now move to the government. Mr. Miller. May it please the Court, Counsel Eugene Miller for the United States, to address the questions you asked there. Because the United States' position is that on this record, the chronic doesn't apply. This isn't the exceedingly narrow exception for where there is a complete absence of counsel. And frankly, Mr. Sarm, as the district court who presided over the trial found, did a commendable job in the light of overwhelming evidence of guilt, as the Court has already pointed out. But we don't give all that much weight to the judge saying good job. I mean, the judge can't insulate even Strickland problem just by— Agreed, Your Honor. Otherwise, there would never be a Strickland case. The judges would just say, oh, man, you're so great. That's correct. And that was sua sponte at the end of the trial, which judges do from time to time. But then the judge later found, based on the motion, then went into detail that through all the observations, both pretrial and during the trial, that in the district court's opinion, that he had seen no evidence of impairment and that, in fact, that Mr. Sarm had done a commendable job in the light of overwhelming evidence. But what I would like to focus on is impairment or no. Let's assume we're under Strickland because obviously, as you say, chronic is a pretty narrow road to go down. Mr. Sarm's performance at this trial is pretty appalling. He did some things, but he doesn't cross-examine particularly well. He doesn't raise arguments. He doesn't—you know, I don't know. It's just—it's a very substandard performance. And if then you layer back in again that maybe he's not thinking clearly because he's an addict and he's experiencing maybe withdrawal. Maybe he's not on drugs. Maybe it's a withdrawal problem. That's not the kind of representation that the Sixth Amendment assures, is it? Well, we would not agree that the record establishes substandard performance from what we've seen. We think this was—I mean, to give the district judge's finding, this was an attempt to put on a defense where there was no defense. He doesn't review all of the discovery. He doesn't cross-examine five out of the 11 witnesses. He doesn't advance pretrial challenges to the admissibility of the prior firearm possession. He doesn't really present a defense case. They just rest. And I'll address each of those. For example, on the cross-examination, I think as we all know, there have been many witnesses I have chosen not to cross-examine because either the witness will hurt me or I frankly have no questions to ask. In this case, Mr. Serm cross-examined six of the 11 witnesses. Most of the witnesses he did not cross-examine were experts on DNA and on drug results that there was no legitimate challenge to. Another was an expert who I've seen in other cases attorneys try to cross-examine to their peril. The witnesses that Mr. Serm did cross-examine were the witnesses that were the occurrence witnesses that were there on the scene, the confidential source, the case agent, the two troopers who made the traffic stop that found the drugs and the guns and the buy money. And one of those officers he went after fairly extensively in a cross-examination about not writing reports and matters like that. And so there wasn't a lot here to work with. That's why I was focused on what I'm focused on. I know the way it was argued, and you're going to say that's forfeited and all that. But it is very difficult for me to look at this fact pattern, and I think you just put it well. There's no defense. There is no defense to the 924C charge. And we don't disagree with you, Your Honor. So the withdrawal of the guilty plea and you superseding, which is completely your right, that is completely predictable. I mean, to the tune of 100%. You're going to go to trial on two 924C charges, and he has a prior 924C. So what in the world is the withdrawal of the guilty plea about? Are we sure that's informed? Well, I'll say two things. First is you are correct. It hasn't been raised at all here. And I believe, Your Honor, I mean to give the court some comfort, I guess we'd have to see. The question would be whether that could be raised in the 2255 after this because if it hasn't been litigated here… Oh, I know. …then it could be raised in the 2255, and that would be the time for the evidentiary hearing. Is that so clear, though? Because we have said that there is a theory of ineffective assistance of counsel, and there are often different instances of ineffective assistance within a trial. So it's not at all clear to me. This is an unusual case in that there's a motion for new trial pending where matters that are not in the trial record can come out. You're right, Your Honor, and we noted that in our brief. And this is a case, to answer the question, where Mr. Evans, and I would support it, is Mr. Evans has made wrong choice after wrong choice because… So Mr. Evans is not trained as a lawyer. He is not. Mr. Evans has no idea what is about to befall him. But as we note in the record, Mr. Evans, he initially was appointed a federal public defender after a week.  It went on to two more appointments until the attorney had at the time the case came to trial. He only pled guilty to the initially in an open plea to the two distribution of heroin counts, didn't plead guilty, fell in possession of 924C. Then on the eve of trial with his DNA being found on the gun, taking his attorney's advice, he pled guilty to the 924C charge. The gun's found in a trap. He admits that he got the gun by exchanging it for heroin. There's no defense. Zero. Right. We haven't gotten to that point yet, Your Honor, though he pled guilty and then signed a cooperation agreement with the United States. Then he sat down and proffered for months and gave information about guns, numerous guns that he put on the streets of Chicago that rounded up in gang members' hands that were involved in violent crimes. And then as we went forward with that attorney, he then decided – or Mr. Evans decided he didn't want to cooperate anymore. He just wouldn't. And he wanted to withdraw his plea. Here's what worries me, Mr. Miller. I'm thinking about the administration of criminal justice. It is concerning that a lawyer advising Mr. Evans may have been impaired by a substantial heroin addiction when Evans faces this predicament of no defenses and stacked 924Cs. I understand. I mean that's a – that is a big deal. I understand. But again, to put it in context, so he pled guilty and cooperated with a different attorney. He then got rid of that attorney. So a third or fourth attorney. He's a tough client. There's no doubt about it. Got a new attorney who then filed, after consulting with him, a different attorney. Filed his motion to withdraw his guilty plea. So that was filed with a different attorney. It was only then, while that was pending, that he then asked to – How could he have made a worse decision? I don't disagree, and it's conversations we had with defense attorneys, but we don't have the conversations, obviously, directly with the defendant. And the defendant filed that motion and then got rid of that attorney. Then Mr. Sarum was appointed while the motion to withdraw was pending. So it wasn't his – it was clearly Mr. Evans' choice in decision. But he renews it. He renews it, though. I'm sorry? He renews it. He absolutely does. And then we have the hearing, and I'll be honest. I was surprised that the chief judge allowed him to withdraw his guilty plea. We did oppose that, but the chief judge did. And so then we were in the position. Now he's – and then he testifies at the hearing and says he picked up the guns afterwards in Gilman, which would, if correct, would mean he didn't carry them during the heroin deal but would have him guilty for possessing them in furtherance of the possession of the methamphetamine. Mr. Miller, specifically to the Rule 29 and Rule 33 motions, those are brought by even another lawyer, correct? That's correct. And that lawyer, obviously, would have met with Mr. Evans. And when Judge Bruce asks for these statements, these position statements, there was never an affidavit submitted from Mr. Evans that would have been worked on with this new lawyer that would have said he was – that Mr. Sarum was delaying in back. The reason for the adjournment was his addiction. I couldn't get his attention. We never hear from Mr. Evans' mouth with regard to Mr. Sarum's performance being affected by the drugs. That's correct. And, in fact, there was an affidavit that was submitted by the government that said Mr. Sarum stated that he was not using a controlled substance at any relevant point during the trial. And the defense counsel actually obtained some affidavit from Mr. Sarum and didn't end up submitting it because they didn't think it was helpful to their case. Docket Entry 174 is the one that was submitted but not signed, and Docket Entry 175 is signed. Correct. Correct. And so that's how we sort of got to this position. I do want to address, if I may, just a couple of the issues raised here. There was a sense that we didn't – we agreed that Finley was not factually distinguishable and that there would be a circuit split. That's not the position of the United States in the brief. The reason we didn't discuss Finley is because this court in CEJAS and Curitin has already established what the unit of the prosecution is for a 924 service. Well, we've drawn lines, and the question is how do those lines apply here? Not at all clear to me that this is two separate incidents in relation to these other crimes. And if I may address that because I do think that's an important question here. Finley is the case they rely on in the second circuit is distinguishable. That was a controlled buy. The guns are sitting in the house. A controlled buy of some amount of cocaine, while there's other cocaine that's left over, is made. I think it's within three minutes. They do a search of the house. There's the gun in the car and the heroin and the methamphetamine. They're all sitting there together. He takes the heroin over for the controlled buy, the methamphetamine. It's really not so different. That may be that the methamphetamine was there. Again, we don't know that because there was a substantial period of time, in this case much more, 30 minutes, where he was free. He had driven through Gilman. He could have obtained the methamphetamine. I thought he was under DDA surveillance. He was. He was. The reason he brought this up is there was a period he was underneath some trees in town when he was suggesting that perhaps he could have got the gun there. Let me give you a hypothetical. Suppose that a defendant heroin dealer on a corner sells a baggie or a glassine at the top of every hour for 10 straight hours to 10 different customers, and it's all on tape, every last bit of it. It turns out all along that he's had a gun in his waistband to protect the baggies and to protect the proceeds of it. You could indict him, I think, on 10 distribution counts. Counts 1 through 10. Could counts 11 through 20 be 924C charges? Your Honor, I believe if you—that was the situation that the court discussed in Curitin initially to talk about, and then Sahas repeated it was that if a defendant on the same day delivers, chooses to—and there I think they called it carry, but chooses to carry a gun during a drug distribution in the morning and chooses to carry a gun during a drug distribution in the afternoon, those are 279— Right. The reason I gave you—the reason I set the hypothetical up is to get at the points Judge Wood is making. This is pretty darn close in time, right? And the gun is in the waistband the whole time as all 10 customers roll up. It is, Your Honor. It is close, but at least—and we, of course, we researched this before we charged the second 924C. We think Sahas is clear that this is on the other side of that line. What occurred here was a distribution to a CS that involved one drug, heroin, that the deal was set up for heroin and didn't involve methamphetamine. All that heroin was distributed at the deal. There was none found later. The defendant then leaves. There is a period of time—and again, it's not—it's 30 minutes, but a period of time that is elapsed. The defendant could have—and again, we know that defendants often don't, but the defendant could have gotten rid of the gun if they only needed— But it was under surveillance. People would have noticed it immediately. Well, that's correct. That's correct. They would have noticed, but then he wouldn't have been responsible for the possession of the gun in furtherance of the methamphetamine trafficking. I thought the whole point of the surveillance was we're going to follow him to 57 and a state trooper is going to pull him over and everything is going to be over here in a few minutes. I don't know about a few, but that is correct. That is correct. All right. I would agree with that. And this is a case—again, it really comes down, as we would note, to sort of Mr. Evans' choices that created—put us in this situation. But Finley, just to say—and I know I'm well over my time here, but I think it is an important point—is quite distinguishable here because of that because there was—the gun was passive was the word used in Finley. It was never touched, never—Mr.—in this case, Mr. Evans had actually accessed that area again with drug packaging and money and stuff. And so then it— No evidence that he even touched the gun. We don't know what— No evidence that he even touched the gun. In that time period? That's correct. His DNA was on the gun, but that could have been before. Could have been from well before. That's correct, Your Honor. Thank you, Mr. Miller. Thank you. We'll now move back to rebuttal argument, Ms. Wong. Thank you, Your Honors. Three points. First, Judge Scudder, let me present what the 924c defense would have been. And I want to focus on count three. Good luck. In order to prove count three, the government had to show not just that Evans knowingly possessed a firearm on August 24, 2016, but that he did so in furtherance of or in relation to the drug transaction to which he pled guilty. In other words, the sale of heroin to Ms. Penny Wilford that day. There is no reason that Mr. Evans would have needed a gun for that exchange. Ms. Wilford, he's meeting her in public, in a public place of his choosing, in the middle of the day, at a gas station. She's the sister of one of his friends. There's no indication that she is a threat to him in any way. The jury could have found that there was no connection there. Also, there was a passenger in Mr. Evans' car that day. And there's even a question about whether the guns were knowingly in Mr. Evans' possession or instead if they'd just been brought in the car by the passenger who was there. Evans never took, there's no evidence Evans ever took those guns out of the car when he went out of his car to go meet Ms. Wilford for that drug transaction. The government relied on two pieces of evidence at trial for the connection that they say exists between the guns and the drugs. So first, the government relied on testimony from two witnesses, Agent McGuire and Agent Vessels, both of whom testified that, in general, the types of guns that were found are the kinds of guns that are commonly used by drug dealers. These are two of the witnesses that trial counsel failed to cross-examine entirely. Not one of the witnesses where he asked two questions or five questions, zero questions. He should have instead asked them the kinds of questions that defense attorneys typically use to cross-examine experts like this in 924c cases. For example, are there other reasons besides drug trafficking why people might permissibly have guns in general, such as for permissible self-defense? Where do the kinds of drug trafficking activities that typically involve guns usually take place? Is it usually in a public space in the middle of the day, like the transaction here, or not? For Agent Vessels in particular, was he personally aware of any facts specific to Evans' case? Did he even know that there was a passenger in Evans' car or that the guns had never left Evans' car when Evans went to do that transaction that day? Those are the kinds of questions that trial counsel could have but did not ask. Two other very quick points. I'm sorry, I see that I am out of time. Quickly, Confiscio. Mr. Miller mentioned the affidavit. I think he paraphrased it as saying that trial counsel said in that affidavit that he was not using substances during trial. That is not what the affidavit says. The affidavit is at docket 177 and it uses much more vague language, just slightly different, but the difference matters. It says that trial counsel was not impaired during Evans' jury trial and was not impaired at any relevant time before then. That is completely conclusory. It may be true, we assume it's true, it may be the case that there were some times during the jury trial when trial counsel wasn't impaired. But it leaves open the question whether there were other times when he was impaired. Trial counsel could have said in the affidavit that he was never impaired or that he wasn't using drugs at all during trial, if that were the case, but tellingly the affidavit doesn't say that. It's much more vague. There should have been an evidentiary hearing to test it. The final thing I will say is that Curitin plainly does not address or answer the sentencing question that we teed up here. In a footnote, Curitin cites Finley and notes specifically that the fact pattern of Finley was not present and that the question presented by Finley and in this case on the 924C issue had not been decided and wasn't being decided in Curitin. Thank you, Ms. Wong. Thank you. Thank you, Mr. Miller. The case will be taken under advisement. Ms. Wong, your firm has represented Mr. Evans Pro Bono and you have our great thanks as well as the thanks of the full court. Thank you.